Newport and Providence Railway Co. and The Short Line, Inc. vs. Paramount Coaches, Inc., et al. } Eq. No. 2317.

March 11, 1931.

HAHN, J. Heard on original bill, supplemental bill, answer, amended answer, and proof.

The original bill was filed by the Newport and Providence Railway Company and prayed that respondent be restrained and enjoined from alleged illegal operation of a motor coach line between Providence and Newport, via Fall River, in competition with complainant's line.

A restraining order was issued and thereafter a preliminary injunction as follows:

"That the respondent be and it is hereby enjoined and restrained from in any manner advertising, soliciting, transporting or carrying passengers for hire in intrastate transportation between the cities of Newport and Providence and the intervening towns, and more particularly from advertising or soliciting transportation exclusively between Newport and Providence and the intervening towns, and from selling tickets for transportation between the two termini or between either of the cities and any intervening towns with the State of Rhode Island."

The Short Line, Inc., successor to the Newport and Providence Railway Company, filed a bill in the nature of a supplemental bill, with similar prayers for relief.

Carriers of passengers by means of motor busses engaged in intrastate traffic are subject to State regulations as to routes, fares, operation, sanitary conditions, class of service furnished, trips, service and competition, etc.,

while those engaged in interstate commerce are subject only to such of these regulations as touch the public safety, order and conservation of the highways.

Newport Elec. Corp. vs. Oakley, 47 R. I. 19.

The question is whether respondent is operating an interstate or an intrastate line. The testimony shows that in instituting a line of coaches from Newport to Fall River to Providence the opportunities presented for business are the passenger travel on the through trip, the like travel between Newport and Fall River, and between Providence and Fall River. Fall River has a population about four times that of Newport, and Providence nearly twice that of Fall River. The heaviest travel would be looked for, and unquestionably is, between Providence and Fall River. If the location of the cities were such that the through route was between Providence and Fall River with Newport as the intermediate point, the part way travel might well be inconsiderable beside the through business.

The evidence as presented shows that respondent carries numerous passengers between Nwport and Fall River and Fall River and Providence, as well as the through traffic between Newport and Providence. While at the hearing before the Public Utilities Commission some of the witnesses and officials of the respondent dwelt upon the Providence and Newport traffic as being important, there is nothing in the case to show that respondent would have found it profitable to carry passengers between these points alone, as the complainant's line is considerably shorter and more convenient. The interstate feature of respondent's line seems logically (as well as according to the testimony of respondent's witnesses) the more important and profitable part. As between Newport and Fall River and between Fall River and Providence its route is as short as any other, its

busses smaller and probably speedier than the regular competitors' on these lines, while between Providence and Newport it is competing with a shorter line which, in the nature of things, can give speedier and more direct transportation.

With the cities and population as they are respondent must be held to be engaged in an interstate business rather than in an intrastate one, and the distance traveled in Massachusetts supports this finding. There is nothing to show that respondent particularly featured the Providence-Newport trip, while there is evidence that extra coaches were run between Providence and Fall River.

In the following cases, largely relied upon by complainant, the part of the routes objected to lay all within one state.

"It does not seek to restrain the carriage of interstate passengers by the defendant, but only such passengers as are during their entire journey within the territorial limits of this Commonwealth."

Boston & Maine R. R. vs. Cate, 254 Mass. 248, 250;

Boston & Maine R. R. vs. Hart, 254 Mass. 253;

Barrows et al. vs. Farnum's Stage Lines, Inc., 150 N. E. 206 (Mass.);

Haselton vs. Interstate Stage Lines Inc., 133 Atl. (N. H.) 451;

Interstate Busses vs. Holyoke St. Ry. 273 U. S. 45;

N. Y. Central R. R. Co. vs. The Conlin Bus Lines, 258 Mass. 498.

In the following case, which more nearly sustains complainant, a route between Providence, Attleboro, and Woonsocket was involved, and the Court said:

"The question before us, taking the evidence most favorable to the plaintiff, is whether a bus, using the highways for carrying for hire in-

trastate passengers, escapes state highway regulations because it may also carry an occasional interstate passenger. In our opinion it does not. Still less does it do so if (as on the present record is at least probable) the interstate character of the transportation is 'a discreditable subterfuge to which this court ought not to lend its countenance'."

> *Inter-City Coach Co.* vs. *Atwood, et al.*, 21 Fed. (2nd) 83, 85.

The facts, so far as the respondent is concerned, in the present case much more nearly resemble those in the following cases, in one of which the case just quoted from is cited.

> *Garrison* vs. *Paramount Bus. Corp.* 223 N. Y. App. Div. 75;
> *Pine-Hill-Kingston Bus Corp.* vs. *Davis*, 225 N. Y. App. Div. 182.

In both of these cases defendants ran a bus line from New York City to other points in New York State, the routes for a part of the way taking the busses through New Jersey. In both cases defendant was held to be engaged in interstate commerce and in the Pine Hill case the Court said:

> "Defendant is engaged in interstate commerce. (*Garrison* vs. *Paramount Bus Corporation*, 233 App. Div. 75; *Western Union Telegraph Co.* vs. *Speight*, 254 U. S. 17; *Interstate Busses Corporation* vs. *Holyoke Street Railway Co.*, 273 id. 45). A common carrier passing through a foreign State en route between termini in the originating State, is engaged in interstate commerce, unless the route is unreasonable *Western Union Telegraph Co.* vs. *Speight, supra*) or a subterfuge for the purpose of taking advantage of Federal statutes. (*Inter-City Coach Co.* vs. *Atwood*, 21 Fed. (2d) 83.) The cogent reasoning of defendant is that his route is reasonable, and is not a subterfuge, because passengers are obtained in New Jersey, and the highways are less congested with traffic than those of the Hudson river."

Subject to the exceptions pointed out in the opinion quoted, transportation between points in the same state but passing en route through another state is interstate commerce.

> *Hanley* vs. *Kansas City So. Ry. Co.*, 187 U. S. 617;
> *Western Union Tel. Co.* vs. *Speight*, 254 U. S. 17;
> *Missouri Pac. R. R. Co.* vs. *Stroud*, 267 U. S. 404;
> *United States* vs. *Winkler*, 299 Fed. 832.

Respondent carries on a bona fide interstate commerce business between Providence and Fall River, and between Newport and Fall River, and the passenger service between Providence and Newport (via Fall River) appears to fall well within the general rule as to interstate commerce above stated.

Respondent's busses generally make a stop of at least ten minutes at Fall River each way, and respondent maintains garage accommodations in Fall River for keeping its busses in connection with over-night stopping there. Accordingly Fall River appears more in the way of a terminus than a mere way stop. Respondent's total route is some 37 miles, of which almost half lies in Massachusetts.

Respondent being engaged in interstate, rather than intrastate, carriage of passengers, complainant's prayers must be denied and the bills dismissed, and restraining order heretofore entered dissolved.

For complainants: Burdick, Corcoran & Peckham.

For respondent: Robert M. Dannin.